IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ANTHONY A. ABBATIELLO, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : Civil Action No. 19-1317-CFC | |
| | : | |
| DANA METZGER, et al., | : | |
| Defendants. | : | |

Anthony A. Abbatiello, James T. Vaughn Correctional Center, Smyrna, Delaware.    Pro Se Plaintiff.

Kenneth Lee-Kay Wan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.    Counsel for Defendants.

**MEMORANDUM OPINION**

February 22, 2021
Wilmington, Delaware

**CONNOLLY, U.S. District Judge:**

Plaintiff, an inmate the James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights.   (D.I. 3)   He appears *pro se* and was granted permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.   Before the Court is Defendants' motion to dismiss.   (D.I. 33)   The matter is fully briefed.

I.      **BACKGROUND**

The following facts are taken from the Complaint and assumed to be true for purposes of deciding the pending motion.   *See Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).   Plaintiff raises three claims.

First, Plaintiff alleges there is black mold growing inside airducts in the JTVCC ventilation system due to a building code violation (*i.e.*, "cold air returns hooked up inside of the shower rooms in Buildings B, D, V, W, 17-19 in order to vent steam") and that Defendant JTVCC Warden Dana Metzger ("Metzger") and former Delaware Department of Correction ("DOC") Commissioner Perry Phelps ("Phelps") were aware of the black mold.   (D.I. 3 at 5)    (*Id.*)   Plaintiff alleges that as a result of the black mold he has suffered breathing problems and is exposed to cancerous materials.   (*Id.* at 6)

Second, Plaintiff alleges that Metzger and Phelps are mismanaging an inmate betterment fund.   (*Id.*)   He explains that the fund is owned by the inmates, and Defendants will not tell him how much money is in the account and will not allow him to vote on its spending.   (*Id.*)   And, third, Plaintiff alleges that Metzger and Phelps will not allow him to marry unless his fiancé participates in a twelve-part group seminar.   (*Id.*)   Plaintiff alleges that Defendants' interpretation of BOP policy 3.36 is skewed and the policy is unconstitutional.   (*Id.*)

1

Plaintiff submitted the following grievances.

**Ventilation**.   Grievance #428972, submitted November 14, 2018, complains of an ongoing incident regarding the ventilation system because of an illegal hook-up that creates a risk to health.   (D.I. 33-4 at 2, 5)   The grievance was returned as unprocessed and marked "Other.   This is an issue that is usually addressed within the unit.   Please communicate with the building staff to submit a work order.   If work order isn't submitted then please resubmit another grievance indicating such."   (*Id.* at 3-4) Grievance #459998, submitted July 1, 2019, complains of an ongoing incident regarding black mold spores in the ventilation system.[1]   (D.I. 33-5 at 2-4)   In the grievance Plaintiff states, "I have written to maintenance about this several times as directed. However, they refuse to respond or correct the problem."   (*Id.* at 2)   Grievance #459998 was accepted for the maintenance issue.   (*Id.* at 6)   The grievance was unresolved and forwarded to the residence grievance committee/subject matter expert panel on September 24, 2019).   On November 29, 2019, the SME recommended denial of the grievance.   (*Id.* at 7)   Plaintiff appealed and the appeal was denied on December 10, 2019.   (*Id.* at 8-9)   The appeal states that maintenance performed a total cleaning of the vents and ductwork and that no mold had been discovered, but plenty of dust, dirt, and mildew had been cleaned and removed.   (*Id.* at 9)   On January 9, 2020, Plaintiff was advised that he had fully exhausted Grievance #459998. (D.I. 34 at 12)

**Inmate Betterment Fund**.   Grievance #428970, submitted November 14,

---

[1] Plaintiff also submitted a medical grievance on July 1, 2019, complaining that he could not breath because of heat, poor ventilation, and black mold running through the air vents.   (*See* D.I. 33-5 at 10-12)   The Complaint does not raise medical needs claims.

2018, complains of an ongoing incident regarding the inmate betterment fund because Plaintiff was not consulted on how the funds are spent.   (D.I. 33-3 at 2-3)   The grievance was returned as unprocessed and marked "Other.   Decisions for the inmate betterment fund are made by Tonya Smith, Support Services Manager.   Please correspond with her via in house mail"   (*Id.* at 4-5)

**Inmate Marriage**.   Grievance # 455429, submitted May 31, 2019, complains of an ongoing incident regarding permission to marry.   (D.I. 35-1 at 2-7)   The grievance was returned as unprocessed and marked "Request.   Requests are not processed through the grievance procedure.   Please correspond with the appropriate office to secure the information that is request."   It was also marked "Other.   Any changes to the way this is done can only be changed by the Warden and the Chaplain you will have to write them with your request, just because they do not respond does not mean they are not looking into your issue."   (*Id.* at 6-7)   Plaintiff had written to the warden on May 28, 2019 prior to submission of the grievance and the JTVCC legal services administrator responded to the letter June 6, 2019.   (D.I. 36 at 7-12)   Plaintiff replied on June 8, 2019 and copied both the warden and the chaplain with his reply.   (*Id.*)   Plaintiff received a letter from the chaplain on June 11, 2019 regarding institutional marriage.   (*Id.* at 13)

Plaintiff commenced this action on July 16, 2019.   (D.I. 3 at 8)   In the Complaint he states that the grievance process is complete.   (*Id.*)   On August 15, 2019, Plaintiff filed a motion to withdraw the Complaint "in order to exhaust his . . . remedies" with regard to an asbestos claim.   (D.I. 10 at 1)   On August 26, 2019, Plaintiff moved to reinstate the lawsuit and indicated that he was not pursuing the asbestos claim.   (D.I.

3

12)

## II.    LEGAL STANDARDS

Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).    To state a claim upon which relief can be granted a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."    Fed. R. Civ. P. 8(a)(2).    Detailed factual allegations are not required, but the complaint must set forth enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).    A claim is facially plausible when the factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).    "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

When considering Rule 12(b)(6) motions to dismiss, the Court must accept as true all factual allegations in the complaint and view them in the light most favorable to Plaintiff. *Umland v. Planco Fin. Servs.*, 542 F.3d at 64.    The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citations omitted).

## III.    DISCUSSION

Defendants move to dismiss for failure to exhaust administrative remedy process or, in the alternative, for an evidentiary hearing to determine whether Plaintiff exhausted his administrative remedies.    Plaintiff opposes.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). The PLRA requires "proper exhaustion," meaning exhaustion of those administrative remedies that are "available."   *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

Because an inmate's failure to exhaust under PLRA is an affirmative defense, the inmate is not required to specially plead or demonstrate exhaustion in his complaint. *Jones v. Bock*, 549 U.S. 199 (2007); *West v. Emig*, 787 F. App'x 812, 814) (3d Cir. 2019); *see also Small v. Camden Cty.*, 728 F.3d 265, 268 (3d Cir. 2013) ("Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff.").   Failure to exhaust administrative remedies must be pled and proved by the defendant.   *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018); *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

Exhaustion applies only when administrative remedies are "available."   *See Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850 (2016).   Administrative remedies are not available when the procedure "operates as a simple dead end--with officers unable or consistently unwilling to provide any relief to aggrieved inmates," where it is "so opaque that it becomes, practically speaking, incapable of use," or "when prison administrators thwart inmates from taking advantage of a grievance process through machination,

misrepresentation, or intimidation." *Id.* at 1859-60.   "Just as inmates must properly exhaust administrative remedies per the prison's grievance procedures, prison officials must strictly comply with their own policies."   *Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (citing *Shifflett v. Korszniak*, 934 F.3d 356, 367 (3d Cir. 2019) ("[W]e hold that [the PLRA] requires strict compliance by prison officials with their own policies.").   "When an administrative process is susceptible [to] multiple reasonable interpretations, . . . the inmate should err on the side of exhaustion.'"   *Id.* (quoting *Ross*, 136 S. Ct. at 1859).

Defendants argue that Plaintiff did not exhaust his administrative remedies for any of his claims because he did not complete the appeals process for any grievance and there is no evidence supporting Plaintiff's assertion that he did.   They contend that Plaintiff did not identify the date his claims arose as required by Inmate Grievance Procedure No. 4.4 but instead referred to the claims as "ongoing."   Defendants argue that, because of this failure to allege a specific date of occurrence, Plaintiff cannot demonstrate that he timely submitted his grievances (*i.e.*, within seven days of the incident underlying the claim).   Finally, Defendants argue that Plaintiff cannot maintain any claims based upon grievances he submitted after July 1, 2019, since he commenced this action 15 days later and, therefore, did not allow for the 180 days provided under the grievance procedure to complete the grievance process.

Inmate Grievance Policy No. 4.4 provides that "[g]rievances can be returned unprocessed if they . . . were filed after the expiration of the applicable filing time period" or "are merely requests for information or services that may be obtained by other means."   (D.I. 33-2 at ¶ VI.13.)   The non-emergency grievance resolution consists of

three steps.   (*See id.* at ¶ VII.)   Step one provides for informal resolution.   At step two

the resident grievance committee/subject matter expert panel makes a recommendation

to the warden who then, based on that recommendation, makes a decision, which may

be appealed.   Upon appeal, at step three, the bureau grievance officer makes a

recommendation to the bureau chief who accepts or rejects the recommendation.   The

bureau chief's decision is final.

The Court turns first to those grievances that were returned unprocessed.

Notably, none of the grievances were returned unprocessed as untimely.   In each of

the returned grievances, Plaintiff was told to communicate with various prison personnel

to obtain the services he requested.   This includes the November 14, 2018 grievances

submitted on air quality and the inmate betterment fund, and the May 31, 2019 inmate

marriage request, all of which were submitted and returned as unprocessed prior to the

filing of the complaint.   These grievances are not governed by the three grievance

resolution steps in Policy No. 4.4 as they were considered "merely requests for

services."   In addition, the record reflects that, as directed, Plaintiff contacted

maintenance to no avail, as well as the warden and chaplain regarding inmate marriage.

The record is silent on whether Plaintiff contacted prison personnel on the betterment

fund issue.   As noted, however, this grievance is not governed by Policy No. 4.4.

Our District Court has previously noted that the "return[s] of unprocessed

grievance" instructions in use at JTVCC are "confusing at best."   *See Rahim, v.*

*Holden*, 882 F. Supp. 2d 638, 643 (D. Del. 2012).   If the DOC requires inmates to

administratively exhaust grievances returned as "unprocessed" then prison policy

should provide guidance on what steps the inmate must take to administratively exhaust

unprocessed grievances.   The Court will deny the motion to dismiss the ventilation, inmate better fund, and inmate marriage claims raised in the November 18, 2018 and May 31, 2019 grievances.

Defendant's claims raised in the July 1, 2019 grievance, #459998, complaining of mold in the vents and shower room will be dismissed.   Plaintiff provided a letter from the bureau chief, dated January 9, 2020, denying Plaintiff's appeal that states, "this fully exhausts all available administrative remedies." (D.I. 34 at 12)   The January 9, 2020 exhaustion occurred long after submission of Plaintiff's complaint on July 1, 2019.   *See Drumgo v. Radcliff*, 661 F. App'x 758 n.2 (3d Cir. 2016) (citing *Ahmed v. Dragovich*, 297 F.3d 201, 209 & n.9 (3d Cir. 2002) (holding that exhaustion must be completed before a complaint is filed)).   Accordingly, the Court will grant Defendants' motion to dismiss the claims raised in the July 1, 2019 grievance.

## IV.   CONCLUSION

For the above reasons, the Court will grant in part and deny in Defendants' motion to dismiss.   (D.I. 33)

An appropriate order will be entered.